UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARC B.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

23-CV-887-LJV
DECISION & ORDER

      On August 25, 2023, the plaintiff, Marc B. ("Marc"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On November 27, 2023, Marc moved for judgment on the pleadings, Docket Item 6; on January 26, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on February 9, 2024, Marc replied, Docket Item 11.

_____

    [1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

    [2] Marc applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Marc's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

On July 8, 2022, the ALJ found that Marc had not been under a disability since February 24, 2021, his alleged onset date.  *See* Docket Item 5 at 39, 41.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id* at 39–41.

At step one, the ALJ found that Marc had not engaged in substantial gainful activity since his alleged onset date.  *Id.* at 41.  At step two, the ALJ found that Marc suffered from a single severe, medically determinable impairment: unspecified schizoaffective disorder.  *Id.*

At step three, the ALJ found that Marc's severe, medically determinable impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 42–43.  More specifically, the ALJ found that Marc's impairment did not meet or medically equal listing 12.03 (schizophrenia spectrum and other psychotic disorders).  *Id.*  And in assessing Marc's mental impairment, the ALJ found that Marc was: (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with

3

others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing himself. *Id.* at 43–44.

The ALJ then found that Marc had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §§] 404.1567(b) and 416.967(b)" except that:

> [Marc] can never climb ladders and must avoid exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. [And] he is further limited to no more than simple tasks, frequent interaction with the public, and occasional interaction with co-workers and supervisors.

*Id.* at 45.

At step four, the ALJ found that Marc no longer could perform any past relevant work. *Id.* at 50. But given Marc's age, education, and RFC, the ALJ found at step five that Marc could perform substantial gainful activity as a maid, package sorter, cafeteria worker, or cashier. *Id.* at 51–52; *see Dictionary of Occupational Titles* 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 311.677-010, 1991 WL 672694 (Jan. 1, 2016); *id.* at 211.462-010, 1991 WL 671840 (Jan. 1, 2016). The ALJ therefore found that Marc had not been under a disability from February 24, 2021, through the date of the decision. *See* Docket Item 5 at 52.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

## II. ALLEGATIONS

Marc argues that the ALJ improperly assessed the opinion of Nurse Practitioner Shirley Duane. Docket Item 6-1 at 9–14. More specifically, Marc says that "[t]he ALJ did not explain the supportability or consistency factors" and that "to the extent the ALJ did address the factors, the assessment relied on selectively chosen evidence." *Id.* at 9. For the reasons that follow, this Court disagrees.

## III. ANALYSIS

For claims filed on or after March 27, 2017, such as Marc's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) (internal quotation marks omitted). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he] finds the medical opinions in the case record." *Id.*

The Code of Federal Regulations lists five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ is required to "explain how [he] considered the supportability and consistency factors" because they are "the most important factors,"

and he "may, but [is] not required to, explain how [he] considered the [remaining] factors." *Id.* § 404.1520.c(b)(2).

With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions or prior administrative finding(s) will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative finding will be." *Id.* § 404.1520c(c)(2). Put differently, supportability addresses how well the source explains and provides evidence for his or her opinion, and consistency addresses whether the opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On May 31, 2022, NP Duane completed a "treating medical source statement." Docket Item 5 at 761–66 (capitalization omitted). NP Duane opined that Marc would be off task "[m]ore than 30%" of an 8-hour workday and absent from work "[m]ore than four days per month." *Id.* at 764–65. Moreover, she concluded that Marc would be markedly impaired in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. *Id.* at 766.

The ALJ found that NP Duane's opinion was "not persuasive." *Id.* at 49. In doing so, the ALJ first addressed the opinion's consistency with the rest of the record. The ALJ noted that "more recent treatment records show[ed] essentially unremarkable mental health findings," *id.* (citing *id.* at 608–85), and that "[c]ompared to the treatment

6

history described [elsewhere in the decision], [NP] Duane's opinion is an aberration," *id.* And in fact, the ALJ's assessment was correct: no other provider found Marc to be as limited as NP Duane opined.  *See, e.g.*, *id.* at 534 (opinion of Susan Santarpia, Ph.D., finding only "[m]ild impairment"); *id.* at 605 (opinion of L. Dekeon, Ph.D., finding Marc's impairment to be "non-severe").

As to supportability, the ALJ noted that "[a]lthough [Marc's] symptoms were initially uncontrolled and [he] received inpatient psychiatric care, his symptoms improved with medication compliance."  *Id.* at 49.  And the ALJ observed that NP Duane's more recent "notes reveal that [Marc] has coherent thought form, good attention and concentration, adequate fund of knowledge, intact memory, and good insight and judgment."  *Id.* (citing *id.* at 614–15, 627–29).  Accordingly, the ALJ concluded that NP Duane's opinion was "poorly supported and thereby not persuasive overall."  *Id.*

To be sure, a conclusory statement that an opinion is not supported by the record is inadequate to support an ALJ's determination.  *Drake v. Saul*, 839 F. App'x 584, 586 (2d Cir. 2020) (summary order).  But when an ALJ's reasoning can be gleaned from the record, additional discussion is not required.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  In other words, while the ALJ could have discussed each treatment note and record supporting or not supporting NP Duane's opinion in detail, he was not required to do that.  *See Brault v.*

7

*Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted.  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citation omitted)).

Marc correctly argues that an ALJ cannot "'selectively rel[y] on portions of the record'" when evaluating opinion evidence.  Docket Item 6-1 at 11 (quoting *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022)).  But the ALJ did not do that here.  Instead, the ALJ considered NP Duane's opinion in light of all the evidence in the record.

For example, the ALJ evaluated the April 2021 opinion of Dr. Santarpia, which found that Marc could interact adequately with supervisors, co-workers, and the public; sustain concentration and perform at a consistent pace; and maintain himself appropriately.  Docket Item 5 at 48 (citing *id.* at 532–35).  Dr. Santarpia noted Marc's report that he socializes with family and friends, plays golf, and manages his finances, and she concluded that Marc's impairment was not "significant enough to interfere with [his] ability to function on a daily basis." *Id.* at 534.  The ALJ similarly considered the opinions of Dr. Dekeon and J. May, Ph.D., both state agency psychologists. *Id.*  They concluded that Marc had no more than mild restrictions in functioning, and they opined that he had no functional limitations. *Id.* (citing *id.* at 549–50, 604–05).

Those opinions certainly supported the RFC, especially in light of NP Duane's treatment notes finding that Marc's symptoms were improving over time. *See, e.g.*, *id.* at 610–11, 614–15, 639, 646.  And the fact that the ALJ gave Marc the benefit of the doubt and credited Marc's subjective complaints, *see id.* at 48, crafting a more

8

restrictive RFC than those opinions required, *id.* at 40, was not error.  See *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a claimant's] RFC based on other evidence in the record" was not error (emphasis in original)).

In sum, the ALJ appropriately reviewed the supportability and consistency of NP Duane's opinion in light of NP Duane's own records and all the other evidence in the record.  See *Balsamo v. Chater*, 242 F.3d 75, 81 (2d Cir. 1998) ("[A]n [ALJ] is free to . . . choose between properly submitted medical opinions").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it.

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Marc's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 10, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   December 1, 2025
         Buffalo, New York

                              *Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE